UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| ROY DESHAN TAYLOR, ) | | |
| Institutional ID No. 641287, ) | | |
| SID No. 4311444, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | CIVIL ACTION NO. |
| ) | | 5:09-CV-182-BG |
| NATHANIEL A. QUARTERMAN, ) | | ECF |
| Director, *et al.,* ) | | |
| ) | | |
| Defendants. ) | | |

**REPORT AND RECOMMENDATION**

Plaintiff Roy Deshan Taylor is an inmate incarcerated by the Texas Department of Criminal Justice ("TDCJ"). Proceeding *pro se* and *in forma pauperis*, Taylor filed this civil rights complaint pursuant to 42 U.S.C. § 1983 alleging that officers at the John T. Montford Unit ("Montford Unit") violated his constitutional rights. The United States District Court referred the matter to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). The transfer order directed that the case would be transferred back to the docket of the United States District Court if either Taylor or a defendant did not consent to proceed before this court. The court held a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985), and offered Taylor the opportunity to proceed before the Magistrate Judge, but Taylor declined to do so.

The undersigned has conducted preliminary screening as directed by 28 U.S.C. § 1915(e)(2). After considering Taylor's complaint, the testimony he provided at the *Spears* hearing, and authenticated records provided by TDCJ, the undersigned recommends that the District Court dismiss Taylor's complaint and all claims therein.

**I.      Standard of Review of Complaints Filed *In Forma Pauperis***

The *in forma pauperis* statute, 28 U.S.C. § 1915, permits individuals who are not financially able to pay the court filing fee at the time of bringing their complaint to nonetheless file their complaint and pay the filing fee as "ability to pay allows." *Banos v. O'Guin*, 144 F.3d 883, 884-85 (5th Cir. 1998). The purpose of the statute is to "'guarantee that no citizen shall be denied an opportunity to commence, prosecute, or defend an action, civil or criminal, in any court of the United States, solely because . . . poverty makes it impossible . . . to pay or secure the costs'" of litigation. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (internal quotation omitted)). Thus, Congress enacted the statute to ensure judicial access to indigent individuals. *Id.* Congress also, however, recognized that an individual who is allowed to file complaints without cost, "'unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). In order to guard against abuse that may ensue from the filing of such lawsuits, Congress mandated that the court dismiss a complaint filed *in forma pauperis* if it is determined that the allegation of poverty is untrue or that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); *see Neitzke*, 490 U.S. at 324. The mandate serves to discourage the filing of baseless lawsuits and to conserve judicial resources. *Id.*; *see Holloway v. Hornsby,* 23 F.3d 944, 946 (5th Cir. 1994) (affirming the dismissal of a frivolous complaint and noting that filings by prisoners consume inordinate amounts of scarce judicial resources and may result in the delay of courts hearing valid complaints).

The United States Supreme Court has explained that a claim is "frivolous," as it relates to

2

§ 1915(e)(2), if it lacks an arguable basis in fact or law. *Denton*, 504 U.S. at 31-32. A claim lacks an arguable basis in fact if the facts alleged by the plaintiff are "clearly baseless" because they are fanciful, fantastic, delusional, irrational, or wholly incredible. *Id.* (quoting *Neitzke*, 490 U.S. at 327). "A complaint lacks an arguable basis in law if it is 'based on an indisputably meritless legal theory,' such as if the complaint alleges the violation of a legal interest which clearly does not exist." *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir.1997) (quoting *Neitzke*, 490 U.S. at 327). The court has broad discretion in determining whether a complaint brought *in forma pauperis* should be dismissed, and may dismiss such complaints based on the plaintiff's allegations, testimony obtained at a hearing held pursuant to *Spears*, 766 F.2d at 179, and authenticated prison records, *see Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (acknowledging that dismissals may be based on adequately identified or authenticated records).

## II.   Statement of the Case

Taylor identifies the Defendants as Nathaniel A. Quarterman, the director of TDCJ; Richard E. Wathen, the Warden of the Montford Unit; Andrew Derler, a senior LVN; Dr. Butler, director of psychiatry; and other personnel at the Montford Unit, including Samuel Aguilar; Juanita Medrano; and Sunday Wilson. Taylor claims the Defendants denied him due process of law by forcing him to take medication, acted with deliberate indifference to his serious medical needs, retaliated against him by forcing him to live in a seclusion cell, and subjected him to unconstitutional conditions of confinement.

## III.   Background

TDCJ provided the court with authenticated records prior to the *Spears* hearing. According to the medical records, Taylor suffers from mild, intermittent asthma, recurring dislocation of his

right thumb, and paranoid schizophrenia with associated delusional disorder. He has been diagnosed with severe aggression and impulse disorder, and he suffers from mental retardation and borderline intellectual functioning. The authenticated medical records, which are voluminous, include evidence showing that Taylor frequently suffers from paranoia and delusions which result in both self-harm and assaultive behavior toward others. The records also document the expenditure of a great amount of resources, in the form of time, personnel, and medications to treat Taylor's mental illness to ensure that he does not harm himself or others. Taylor has been incarcerated at the Montford Unit almost continuously during the last five years and has been admitted to the Montford Unit's acute care sub-facility seven times during the same time period. He has attempted to commit suicide a number of times, and his threats to commit suicide are an issue Montford Unit staff must address on an ongoing basis. According to the authenticated medical records, Taylor's most recent attempt at suicide occurred three months prior to Taylor filing the present action; he swallowed razor blades after claiming that spirits had placed a spell on him.

The authenticated records also document a pattern of threatening, belligerent, and disruptive behavior. Taylor has been charged and found guilty of numerous offenses during his incarceration at the Montford Unit and many of those offenses have involved Taylor threatening harm to others and becoming belligerent and violent in response to simple orders. He has a history of taking control of the food slot of his cell; covering the windows of his cell with paper; refusing to relinquish his handcuffs to officers; and threatening to physically harm others. When Taylor has threatened and/or attempted to commit suicide or has exhibited violent and assaultive behavior, Montford Unit staff have placed him in a seclusion cell under assault precautions and 24-hour watch.

**IV.     Due Process Claim of Forced Medication**

Taylor claims Dr. Butler forced him to take the medication Haldol by injection on two occasions[1]; and he claims he was forced to submit to the injection under the threat of force and specifically the use of chemical agents. At the *Spears* hearing Taylor was unable to identify with particularity the dates on which treatment with Haldol was forced upon him. He testified that he believed he was forcibly injected with Haldol in October of 2008 or 2009. He could not recall on what other date he was forcibly treated with the medication.

The authenticated medical records show that physicians have treated Taylor's mental illness with a number of medications, including Haldol as well as Navane, Depakote, amantadine, and Benadryl. And, according to the authenticated medical records, Taylor has consented to treatment with Haldol on a number of occasions, has requested the medication on occasion, and has been treated with the medication without serious side effects. The authenticated medical records also show that Taylor has refused to take Haldol as well as other medications and that medical personnel, including Dr. Butler, have responded by honoring his requests to discontinue treatment with Haldol and other medications. For example, on July 1, 2009, Taylor refused to take Navane claiming that it caused pain in his chest; on August 6, 2009, Taylor attributed pain in his chest to Haldol, and Dr. Butler ordered that treatment with Haldol be discontinued; on September 5, 2009, Taylor was given nitroglycerin for complaints of chest pain but spit it out and refused to take it; and on October 28, 2009, Taylor refused to take Navane because of associated side effects. Based on Taylor's allegations and evidence in the voluminous medical records from TDCJ, the undersigned

---

[1] Haldol is "indicated for use in the management of manifestations of psychotic disorder" and is specifically used to treat patients with schizophrenia. PHYSICIAN'S DESK REFERENCE at 2534-36 (56th ed. 2002).

5

has determined that Plaintiff's claim is clearly baseless and recommends that the District Court dismiss the claim as frivolous. *Denton*, 504 U.S. at 33.

In addition and in the alternative, even if the court were to assume, *arguendo*, that Dr. Butler forcibly treated Taylor's mental illness with Haldol, based on the facts in this case, forced treatment with anti-psychotic medications did not violate Taylor's due process rights. Although an inmate has "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs," *Harper v. Washington*, 494 U.S. 210, 221-222 (1990), "the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic medications against his will if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest," *id*. at 227.

V.   **Claims of Deliberate Indifference to Serious Medical Needs**

Inadequate medical care may constitute a violation of a prisoner's Eighth Amendment rights, but constitutional concerns are implicated only when the claimant alleges acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). A prisoner who brings such a claim carries a substantial burden of showing that the actions he complains of constitute cruel and unusual punishment; "[d]eliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). Deliberate indifference is found only when the facts demonstrate wanton action on the part of prison officials that can be characterized as "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 105-06. The plaintiff must allege that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that demonstrated wanton disregard for a serious medical need. *Domino*, 239 F.3d at 755 (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Authenticated medical

records evidencing examinations, diagnoses, and prescription medications may rebut a prisoner's allegations of deliberate indifference to serious medical needs. *Banuelos*, 41 F.3d at 235.

Taylor claimed in his Complaint that medical staff, including Defendants Aguilar, Medrano, and Wilson, denied him medical attention. He testified at the *Spears* hearing that they ignored his complaints of chest pain, asthma, and arthritis pain.

The authenticated medical records rebut Taylor's claims that he was denied medical attention. The records show medical personnel prescribed and provided him with three different medications for his asthma on an ongoing basis at the Montford Unit and that he was examined on an almost monthly basis and that he never complained during the examinations of problems with his asthma or the medications prescribed to control his asthma. The records also show that medical personnel were responsive to Taylor's complaints of chest pain. For example, between June 11, 2009, and September 9, 2009, Taylor complained of intermittent chest pains a number of times. In response to his complaints, medical personnel provided Taylor with nitroglycerin for his chest pain and ordered five EKGs during the thee-month time period. The results of all five EKGs were within normal limits. Finally, the authenticated records show that medical staff have prescribed ibuprofen, Toradol, and Flexeril in response to Taylor's complaints of arthritis pain and that he has undergone numerous x-rays that have shown minimal to mild degenerative changes.

To the extent Taylor disagrees with the diagnostic and treatment measures medical personnel have used to address his physical complaints; disagreement with medical judgment does not state a constitutional claim. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Likewise, allegations that medical personnel should have attempted different diagnostic testing or alternative methods of treatment is characterized as a disagreement with medical treatment or medical judgment

7

rather than a constitutional claim. *See Estelle*, 429 U.S. at 107; *Norton*, 122 F.3d at 292. In this case, the authenticated medical records demonstrate, contrary to Taylor's allegations, that medical staff, including the Defendants named in this lawsuit, have been responsive and attentive to Taylor's complaints rather than deliberately indifferent to any serious medical need. The District Court may look to authenticated medical records when considering the substance of a prisoner's claim of deliberate indifference to serious medical needs. *See Banuelos*, 41 F.3d at 235 (authenticated medical records may rebut a claim of deliberate indifference). Based on the authenticated medical records, Taylor's deliberate indifference claim should be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

## VI.     Claims of Retaliation and Unconstitutional Conditions of Confinement

Taylor's retaliation claim involves his placement in a seclusion cell in May 2009. His conditions of confinement claim concerns the conditions of confinement in the seclusion cell and in other cells. Taylor claimed at the *Spears* hearing that he was placed in the seclusion cell after Defendant Aguilar told a nurse that he had threatened to kill himself. The authenticated medical records from TDCJ verify this part of Taylor's claim. He was, in fact, placed in a seclusion cell on May 25, 2009. However, Taylor's claim that he was placed in the seclusion cell for the purposes of retaliation is without merit. According to the authenticated records, on May 25, 2009, Taylor was angry that he had been moved from a single cell and placed in a new cell with another inmate, and he demonstrated his anger by acting belligerently and taking control of his hand-restraints as prison guards escorted him from the new cell to the infirmary. After an examination at the infirmary, Taylor refused to return to the new cell claiming that his cell mate was consumed with evil spirits. Staff took him to the day room where security personnel interviewed him about his claim. After the

interview, security attempted to accommodate Taylor and ordered that he be moved to a second cell. After Taylor was escorted to the new cell and saw the inmate in the cell, he refused to enter. Guards then escorted him to a third cell and he was placed in that cell with another inmate without complaint. However, ten minutes later Taylor began shouting and banging on the cell door. According to the authenticated records, he repeatedly shouted that inmates on his cell hall were endangering his life and that guards were not protecting him. When staff arrived at Taylor's cell, he claimed he was suicidal and would hang himself rather than stay in the cell. According to the authenticated records, Taylor shouted the threat a number of times. Because Taylor threatened to commit suicide, he was moved to a fourth cell – an assault precautions cell – and placed on a 24-hour continuous watch.

It has been recognized that courts are generally ill-equipped to resolve problems unique to prisons. *Procunier v. Martinez*, 416 U.S. 396, 405 (1974), *overruled on other grounds*, *Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989); *see also Turner v. Safley*, 482 U.S. 78, 84-85 (1987). Thus, prison regulations that allegedly impinge upon a prisoner's constitutional rights are reviewed under a deferential standard. *Id.* Under that standard, a prison regulation is valid if it is reasonably related to legitimate penological interests. *Turner*, 482 U.S. at 89. "It is generally recognized that security, order, and rehabilitation are legitimate penological objectives." *Morgan v. Quarterman*, 570 F.3d 663, 666 (5th Cir. 2009) (citation omitted); *see also Talib v. Gilley*, 138 F.3d 211 (5th Cir. 1998).

It should be acknowledged that the situation in this case – that of an inmate who repeatedly refuses to be celled with another inmate and threatens to kill himself if he is forced to live in a cell with another inmate – is a problem unique to prisons and of which this court has no expertise. In addition, there is a legitimate penological interest in providing mentally ill prisoners with psychiatric

9

care and ensuring their individual safety as well as the safety of other prisoners and prison staff. *Washington*, 494 U.S. at 225; *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (stating that the provisions of the Eighth Amendment obligate the State to provide prisoners with adequate medical care.) Thus, prison staff must sometimes, for purposes of safety, segregate prisoners who suffer from severe mental illnesses. *See Finney v. Mabry*, 534 F. Supp 1026, 1037 (E.D. Ark. 1982) (holding that prison was required to provide separate facilities for severely mentally ill inmates for their own safety as well as the safety of other inmates).

In this case, given the course of Taylor's mental illness and his history of suicide attempts, his repeated refusal to be confined with another inmate, and his threats to commit suicide, the decision to confine Taylor in a seclusion cell under assault precautions and continuous 24-hour supervision demonstrates an attempt to ensure his safety and the safety of others. Based on evidence in the authenticated records, the decision to do so was reasonably related to legitimate penological interests and did not violate Taylor's constitutional rights. *See Washington*, 494 U.S. at 227. Taylor's claim lacks an arguable basis in fact and law and should therefore be dismissed as frivolous. *Denton*, 504 U.S. at 32-33.

Turning to Taylor's conditions of confinement claims, nothing in his allegations demonstrates that he was subjected to conditions that would violate the United States Constitution. The Eighth Amendment's prohibition against cruel and unusual punishment is not a guarantee of the comforts and conditions a prisoner would otherwise enjoy in the free world; thus, although "prison officials must provide humane conditions of confinement," the Constitution "does not mandate comfortable prisons . . .." *Farmer*, 511 U.S. at 832 (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). Conditions that are restrictive and even harsh are the penalty criminal offenders

pay for their offenses against society, *Rhodes*, 452 U.S. at 347.  The Eighth Amendment protects prisoners from conditions of confinement that constitute threats to health but not against those that cause mere discomfort or inconvenience.  *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989).  Discomfort without more does not violate the Eighth Amendment.  *See, e.g., Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995).  The plaintiff must allege "extreme deprivations . . . to make out a conditions-of-confinement claim."  *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).  In order to establish an Eighth Amendment violation two conditions must be met.  The first condition is an objective inquiry requiring that the conditions of confinement be objectively "so serious as to deprive [the inmate] of the minimal measure of life's necessities."  *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999); *see also Farmer*, 511 U.S. at 834.  The conditions must constitute an "extreme deprivation."  *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998).  The second condition is a subjective inquiry requiring the plaintiff to show that the responsible prison officials acted with deliberate indifference to the prisoner's conditions of confinement.  *Harper*, 174 F.3d at 720; *see also Farmer*, 511 U.S. at 847.  If the court determines that the inmate has not met the first condition of showing an "extreme deprivation," the court need not make a determination as to whether the prison officials acted with deliberate indifference to conditions at issue.  *Davis*, 157 F.3d at 1006.

Taylor claimed at the *Spears* hearing that the seclusion cell he was forced to live in for 48 hours in May 2009 was dirty and did not have a toilet and that he was forced to get the attention of guards to let him out of the cell to use the restroom.  He also claimed that he was and has since been forced to use old milk cartons as drinking cups and that he uses his hands to drink water from a faucet because he does not want to use the milk cartons.  He has also claimed that he was forced to eat meals that consisted of only two peanut butter sandwiches for a one to two week period.

11

Taylor's allegations do not demonstrate extreme deprivations that would rise to the level of a constitutional violation. When considering cell conditions an inmate finds objectionable, the length of confinement in the objectionable conditions is an important factor in the court's analysis; the United States Supreme Court has held that a dirty and crowded cell and an inadequate diet might be tolerable for a few days but intolerably cruel if imposed for weeks or months. *Hutto v. Finney*, 437 U.S. 678, 686 (1978). In *Smith v. Copeland*, 87 F.2d 265 (8th Cir. 1996), the inmate claimed that he was denied bedding and clothing while in solitary confinement, that he was denied food and water, and that he was forced to endure raw sewage from a toilet that had overflowed for a period of four days. *Id*. at 267. The court found that the exposure to the sewage during the four day period amounted to a "*de minimis* imposition" that did not implicate constitutional concerns. *Id.* at 268. In *Hutto*, sometimes as many as eleven inmates were confined in punitive isolation together for an indeterminate period of time. *Id*. at 682. The cells were small and windowless, they contained no furniture, and the one toilet in the cell could only be flushed from outside of the cell. *Id*. at 682-85. The inmates, some of whom suffered from infectious diseases, were forced to trade mattresses at random, and they were given a diet of "grue," which consisted primarily of four-inch squares of meat, potatoes, oleo, syrup, vegetables, eggs, and seasoning that was mashed together and baked; the daily diet consisted of fewer than 1,000 calories per day. *Id.* at 682-85. The court upheld the district court's order which found that the conditions, taken as a whole and given that they were imposed upon prisoner's for indeterminate periods, violated the Eighth Amendment. *Id*. at 688.

Taylor's allegations regarding his confinement in seclusion fall short of those alleged in *Smith* or *Hutto*. He has not alleged a deprivation of life's necessities. He has not alleged that he was deprived of food or water; and he agreed that staff escorted him to a restroom down the hall.

12

Additionally, his contested confinement of two days falls short of the extended punitive isolation in *Hutto*. *See id.* at 683.

Finally, Taylor's complaint that prison staff served him only two peanut butter sandwiches per meal for a one to two week period does not state a constitutional claim. Depriving a prisoner of food constitutes cruel and unusual punishment only if it results in the denial of the minimal civilized measure of life's necessities. *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (citation and quotation omitted). The amount of food denied to the prisoner and the duration of the deprivation are factors relevant in determining whether the prisoner's constitutional rights were violated. *Id.* Other relevant factors are whether the prisoner lost weight or suffered adverse physical effects or risks to his health. *See id.* at 508. The Fifth Circuit Court of Appeals has acknowledged that "[e]ven on a regular, permanent basis, two meals a day may be adequate." *Id.* (citing *Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1986)). In this case, Taylor has not claimed that he was denied food or water; rather, he has claimed only that he was fed peanut butter sandwiches for, at most, two weeks. He has not alleged that the sandwiches were nutritionally inadequate, that he lost weight during the time period at issue, or that he suffered any adverse physical effects or risks to his health. Taylor may have preferred something different than peanut butter sandwiches, but "[m]ere distaste does not represent a constitutionally cognizable complaint." *See Gabel v. Estelle*, 677 F. Supp. 514, 515 (S.D. Tex. 1987) (dismissing prisoners' claims that they were fed only peanut butter sandwiches during a lock down). For the foregoing reasons, Taylor's conditions of confinement claims should be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

**VII.   Recommendation**

The undersigned recommends that the District Court dismiss Taylor's complaint and all claims therein against all defendants pursuant to 28 U.S.C. § 1915(e)(2). The undersigned further

recommends that any pending motions be denied as moot and that the dismissal be considered a "strike" for purposes of 28 U.S.C. § 1915(g). *See Adepegba v. Hammons*, 103 F.3d 383, 387-88 (5th Cir. 1996).

## VIII. Right to Object

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:     June 29, 2010.

_____
NANCY M. KOENIG
United States Magistrate Judge